**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **A.F. BY AND THROUGH HER PARENTS, R.F. AND A.F.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-249** |
| **ASSUMPTION PARISH SCHOOL BOARD** | **SECTION "O"** |

**ORDER AND REASONS**

Before the Court is Defendant Assumption Parish School Board's motion[1] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff A.F., by and through her parents, R.F. and A.F., brings this civil action against Assumption Parish School Board to redress disability-based discrimination under Title II of the Americans with Disabilities Act and the Louisiana Human Rights Act. Plaintiff also alleges negligence and intentional infliction of emotional distress by the Defendant. Plaintiff opposes[2] the motion to dismiss, and Defendant filed a reply.[3]

For the following reasons, Defendant's motion to dismiss is **DENIED**.

## I. BACKGROUND

Plaintiff's claims arise from her time as a student at Pierre Part Elementary School from November 2023 to March 2025.[4] Plaintiff A.F. is a nine-year-old girl diagnosed with urgent incontinence, overactive bladder (OAB), and attention deficit hyperactivity disorder (ADHD).[5] A.F. also takes Tolterodine, a medication that

[1] ECF No. 11.
[2] ECF No. 15.
[3] ECF No. 16.
[4] ECF No. 6 ¶¶ 12, 18–19.
[5] *Id.* ¶¶ 11, 13, 15.

requires her to drink water at consistent intervals throughout the day.[6] Due to her medical conditions and water intake, A.F. often experiences a strong, urgent, and sudden need to urinate and must urinate often.[7] A.F. is self-conscious about her conditions and experienced bullying at her previous school.[8]

After relocating to Louisiana in November 2023, A.F. enrolled as a second-grade student at Pierre Part Elementary.[9] At the time, A.F.'s mother had "an extensive conversation" with the school nurse regarding A.F.'s medical needs.[10] The nurse assured A.F.'s mother that she would inform the second-grade teachers of A.F.'s diagnoses.[11] But throughout her time at Pierre Part Elementary, A.F. alleges that she experienced discrimination and faced retaliation from her teachers due to her conditions.[12] According to the amended complaint, A.F.'s teachers disclosed her diagnoses to classmates, refused her requests to use the restroom, and docked her ClassDojo points for "bad behavior" when she did leave the classroom.[13] A.F. claims her parents tried, unsuccessfully, to remedy the situation with the school nurse, teachers, principal, and superintendent.[14]

As A.F. was preparing to enter the third grade, her mother emailed all four of Pierre Part's third-grade teachers to explain A.F.'s conditions.[15] The email included

---

[6] *Id.* ¶ 42.
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 21.
[9] *Id.* ¶¶ 12, 18–19.
[10] *Id.* ¶ 20.
[11] *Id.* ¶ 23.
[12] *Id.* ¶¶ 1, 30.
[13] *Id.* ¶¶ 24–33, 46–50.
[14] *Id.* ¶¶ 28–29, 34–40.
[15] *Id.* ¶¶ 34, 39–40.

a doctor's note from the Pediatric Urology Clinic of Children's of Mississippi.[16] The doctor's note requested that "[A.F.] be allowed and encouraged to leave the classroom to go to the restroom every two hour(s). Please allow this student to go to the restroom between scheduled voids if she requests to do so."[17] All four teachers responded, acknowledging A.F.'s medical needs and agreeing to seat her near the classroom door so she can excuse herself to the restroom.[18]

But according to the amended complaint, A.F.'s teachers failed to uphold this agreement. A.F. alleges her teachers routinely questioned her requests and refused to let her use the restroom, forcing A.F. to announce her conditions in front of classmates.[19] In one incident, A.F. claims a substitute teacher "grabbed [her] shirt by the shoulder to prevent her from continuing to the restroom."[20] In another incident, the principal threatened to suspend A.F. if she left the classroom for water.[21] In yet another incident, A.F. was sent to the principal's office, where she was questioned about her medical needs for an hour and a half.[22]

Shortly thereafter, A.F. was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood.[23] A.F.'s mother and the principal decided to place her on a 504 Plan[24] after A.F. "verbaliz[ed] that she wants to kill herself."[25] According to

---

[16] *Id.* ¶ 40.
[17] *Id.* ¶ 41.
[18] *Id.* ¶¶ 44–45.
[19] *Id.* ¶¶ 46–50, 62–70.
[20] *Id.* ¶ 65.
[21] *Id.* ¶ 98.
[22] *Id.* ¶ 55.
[23] *Id.* ¶ 57.
[24] A "504 plan" refers to a written plan for a student with a disability pursuant to 29 U.S.C. § 794. ECF No. 15 at 4 n.2.
[25] ECF No. 6 ¶¶ 58–60.

the plan, A.F. would be allowed to visit the school nurse if she felt anxious or was having a panic attack.[26]

Despite the 504 Plan, A.F. claims she was still prevented from seeing the school nurse and accused of "abusing the situation."[27] When A.F.'s mother again tried to discuss the situation with the principal, he told her, "I don't know what else to do at this point . . . I don't know what the big deal is."[28] A.F. missed school and suffered a severe panic attack due to stress and anxiety from the ongoing harassment.[29]

A.F. was later admitted to Children's Psychiatric Hospital from February 22–26 due to severe suicidal thoughts and self-harm.[30] A.F. alleges her mental distress stemmed from the "ongoing bullying and humiliation by [her] teachers."[31] The hospital's social worker recommended enrolling A.F. in a different school or homeschooling her because "the staff of Pierre Part were causing A.F. to experience suicidal thoughts."[32] A.F.'s parents unenrolled her in March 2025.[33]

A.F. filed her amended complaint against Assumption Parish School Board on March 21, 2025.[34] In it, A.F. asserts the following claims: (1) disability discrimination under Title II of the Americans with Disabilities Act; (2) disability discrimination under the Louisiana Human Rights Act; (3) negligence; and (4) intentional infliction

[26] *Id.* ¶ 61.
[27] *Id.* ¶¶ 72, 81, 88, 100.
[28] *Id.* ¶ 72.
[29] *Id.* ¶¶ 81–83.
[30] *Id.* ¶ 105.
[31] *Id.*
[32] *Id.* ¶ 106.
[33] *Id.* ¶¶ 106–07.
[34] *Id.*

of emotional distress.[35] The School Board moves to dismiss A.F.'s claims under Federal Rule of Civil Procedure 12(b)(6).[36]

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

[35] *Id.* ¶¶ 114–32.
[36] ECF No. 11.

A motion under Rule 12(b)(6) "tests the sufficiency of the pleadings, not the merits of the case." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). The Court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *George v. Hobby Lobby Stores, Inc.*, 769 F. Supp. 3d 537, 544 (E.D. La. 2025) (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017)). Therefore, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "[C]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

**B. The Court May Not Consider Material Beyond the Pleading**

Before turning to any count, the Court addresses the scope of the materials it may consider in resolving this motion. In resolving a Rule 12(b)(6) motion, the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Court may only rely on material beyond the pleadings without converting the motion into one for summary judgment under limited exceptions. *George*, 36 F.4th at 619. Under the doctrine of incorporation by reference, the Court may consider a document attached to a Rule 12(b)(6) motion if it is (1) referred to in the complaint; and (2) central to the plaintiff's claim. FED. R. CIV. P. 10(c); *Collins*, 224 F.3d at 498–99. Going

beyond the pleadings is otherwise in error. FED. R. CIV. P. 12(d); *George*, 36 F.4th at 619.[37]

In support of its motion to dismiss, the School Board seeks to introduce a "Suicide Risk Assessment" that the principal of Pierre Part Elementary conducted of A.F. on December 4, 2024. The School Board alleges that Plaintiff's amended complaint relies on "misleading descriptions of events that are directly addressed in [the] Suicide Risk Assessment."[38] The School Board therefore asks this Court to consider the Risk Assessment as part of the pleadings because it is "essential to resolve the plausibility of the Plaintiffs' claims."[39] A.F. opposes the inclusion of the Risk Assessment, arguing that it is neither referenced in the amended complaint nor central to her claim.[40]

The Court agrees with A.F. and declines to consider the Risk Assessment as part of the pleadings. The amended complaint does not reference the Risk Assessment or its contents. The School Board concedes this point, noting that the amended complaint "*implicitly* relies" on events addressed in the Suicide Risk Assessment.[41] But implicit reliance does not amount to reference.

Moreover, the Risk Assessment is not central to A.F.'s claim. The School Board would have the Court consider the Risk Assessment in evaluating whether A.F. has

---

[37] If, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

[38] ECF No. 11-1 at 2.

[39] *Id.* at 3.

[40] ECF No. 15 at 17.

[41] ECF No. 11-1 at 2 (emphasis added).

presented "misleading descriptions of events."[42] However, questions regarding the accuracy of A.F.'s facts are not appropriate for resolution on a motion to dismiss. While the Risk Assessment may ultimately aid in evaluating the merits of A.F.'s claim, the Court may not engage in that inquiry at this time.

For these reasons, the Court declines to consider the Suicide Risk Assessment attached to Defendant's Rule 12(b)(6) motion as part of the pleadings.

## III. ANALYSIS

### A. Failure to State a Claim under Title II of the Americans with Disabilities Act

The School Board first moves to dismiss A.F.'s claim of disability discrimination under the Americans with Disabilities Act (ADA). A.F. presents several theories of liability under the ADA, including failure to accommodate, retaliation, conscious discrimination, and intentional discrimination.[43] The School Board moves to dismiss A.F.'s ADA claims on two grounds. First, the School Board asserts that it never identified A.F. as a student with a disability.[44] Second, the amended complaint fails to allege sufficient facts indicating the School Board's actions amounted to intentional discrimination.[45] Neither of these arguments is persuasive.

Title II of the ADA provides that individuals with disabilities shall not "be excluded from participation in or be denied the benefits of the services, programs, or

[42] *Id.*
[43] ECF No. 15 at 6–10.
[44] ECF No. 11-1 at 5.
[45] *Id.* at 5–6.

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA broadly defines a disability as "a physical or mental impairment that substantially limits one or more major life activities," including "bladder" functions. *Id.* § 12102(1)(A), (2)(B). If there is doubt, the definition of disability "shall be construed in favor of broad coverage." *Id.* § 12102(4)(A).

In its motion to dismiss, the School Board claims it never "identified, recognized, or regarded [A.F.] as having a disability."[46] According to the School Board, A.F.'s medical conditions "do[] not automatically constitute a disability under ADA."[47] While the School Board correctly states that not all medical conditions qualify as disabilities under the ADA, formal recognition of an "ADA-approved disability" is not required. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 163 n.6 (5th Cir. 1996) ("Neither the ADA, nor any corresponding regulations, contain an itemized list of specific disabilities which are covered under the Act."). The ADA protects limitations, not disabilities. *Id.* at 164. It is sufficient for an ADA claim that the public entity knew of the plaintiff's physical or mental impairment and understood the limitations arising from the impairment. *Windham v. Harris Cnty.*, 875 F.3d 229, 236 (5th Cir. 2017).

The question, therefore, is not whether the School Board recognized A.F. as a student with a disability, but whether it recognized her as a student with a *limitation*. A.F. alleges it did. A.F.'s mother alerted the School Board to A.F.'s diagnoses as early as November 2023 when she first spoke with the school nurse. And by August 2024,

---

[46] *Id.* at 5.
[47] *Id.*

all four third-grade teachers acknowledged A.F.'s medical concerns and her doctor's note from the Pediatric Urology Clinic. In these communications A.F. also identified the resulting limitations of her disability, namely, "a strong, urgent, and sudden need to urinate, as well a need to urinate often."[48]

Once a public entity is aware of a person's impairment and resulting limitations, the ADA "impose[s] . . . an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The scope of a reasonable accommodation "'is best determined through a flexible, interactive process' involving both the plaintiff and the public entity." *Windham*, 875 F.3d at 237 n.11 (quoting *Taylor*, 93 F.3d at 165). But once the request for accommodation is made, a defendant can be liable simply for failing to accommodate. *Bennett-Nelson*, 431 F.3d at 454–55 ("Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant.").

A.F. alleges that, despite her repeated requests, the School Board failed to meet its affirmative obligation to accommodate. A.F. made her request in clear and direct terms: "[W]e are requesting that she be allowed and encouraged to leave the classroom to go to the restroom every two hour(s). Please allow this student to go to the restroom between scheduled voids if she requests to do so."[49] Yet, on at least two occasions[50] teachers denied A.F. bathroom access or made accommodating her bathroom needs difficult. When A.F.'s mother expressed concerns about A.F. being

[48] ECF No. 6 ¶ 14.

[49] *Id.* ¶ 41.

[50] According to the amended complaint, these incidents occurred on December 13, 2024, and January 27, 2025. *Id.* ¶¶ 62–70.

denied bathroom use, the school principal minimized her concerns: "I don't know what else to do at this point . . . I don't know what the big deal is."[51]

Accepting these facts as true and viewing them in the light most favorable to the Plaintiff, A.F. has alleged facts sufficient to show, at this stage in the litigation, that the School Board was aware of her disability and limitations and failed to reasonably accommodate them. Therefore, A.F. has raised a plausible claim under Title II of the ADA.

The School Board further claims the facts in the complaint do not allege intentional discrimination.[52] A plaintiff may only recover compensatory damages upon a showing of intentional discrimination. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002). While the Fifth Circuit has "declined to adopt a specific standard of intent," intentional discrimination requires "something more than deliberate indifference." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574–75 (5th Cir. 2018). But the Fifth Circuit has held that evidence of intentional discrimination can arise when a defendant ignores a plaintiff's "repeated requests" for accommodation. *See Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185–86 (5th Cir. 2015) (reversing summary judgement because plaintiffs' repeated requests for auxiliary aids raised a genuine dispute of material fact as to intentional discrimination); *see also Delano-Pyle*, 302 F.3d at 575–76 (concluding that failure to provide an effective form of communication for a hearing-impaired plaintiff was sufficient evidence of intentional discrimination).

---

[51] *Id.* ¶ 73.
[52] ECF No. 11-1 at 5–6.

As discussed, the amended complaint alleges repeated attempts by A.F.'s parents to engage with school administrators and identify a reasonable accommodation. The School Board was unwilling to comply with these requests or otherwise accommodate A.F.'s bathroom needs. Moreover, A.F. alleges she was treated less favorably than other students because of her disability. Teachers singled A.F. out by disclosing her private medical information to her classmates and docking her points for "bad behavior."[53] According to A.F., non-disabled students were not subjected to this same treatment. Taken as true, A.F. has presented facts sufficient to support an inference of intentional discrimination that is inappropriate for resolution on a motion to dismiss. "Intent is usually shown only by inferences. Inferences are for a fact-finder and we are not that." *Perez*, 624 F. App'x at 184 (citation omitted).

For these reasons, Defendant's motion to dismiss for failure to state a claim under Title II of the ADA is **DENIED.**

**B. Failure to State a Claim under the Louisiana Humans Rights Act**

The School Board next moves to dismiss A.F.'s claim of disability discrimination under the Louisiana Human Rights Act (LHRA) for failure to exhaust administrative remedies.[54] The Court declines this argument because the LHRA imposes no such exhaustion requirement.

The LHRA makes it "a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges,

---

[53] ECF No. 6 ¶¶ 24, 31.

[54] ECF No. 11-1 at 7.

advantages, and accommodations of a place of public accommodation . . . on the grounds of . . . disability." La. Rev. Stat. § 51:2247. "Any person deeming himself injured by any alleged violation of the provisions of [the LHRA] shall have a civil cause of action in district court." *Id.* § 51:2264. And while an individual may also file a complaint with the Louisiana Commission on Human Rights, the LHRA "does not impose mandatory administrative review." *Harper v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, No. CIV. A. 97-3391, 1998 WL 470503, at *2 (E.D. La. Aug. 11, 1998); *see Coutcher v. La. Lottery Corp.*, 710 So. 2d 259, 259–60 (La. Ct. App. 1997) ("[T]he legislature had an opportunity to make it clear that an administrative remedy was required, [and] they didn't do so."); *Salard v. Lowe's Home Ctrs., Inc.*, 904 F. Supp. 569, 572 (W.D. La. 1995) ("[A]t no point in the 1988 [LHRA] statutes is there any mention of a requirement to exhaust administrative remedies.").

Because the LHRA does not impose an exhaustion requirement, the School Board's motion to dismiss for failure to exhaust administrative remedies is **DENIED**.

### C. Failure to State a Claim for Negligence

The School Board next moves to dismiss A.F.'s claim of negligence because the amended complaint fails to allege facts sufficient to support a breach of duty.[55] The Court does not agree. A.F.'s allegations that the School Board violated its statutory duties under the ADA and LHRA present a plausible breach of duty to support her negligence claim.

Louisiana courts determine liability for negligence by applying a duty/risk

[55] *Id.* at 8.

analysis. *Pellerin v. Foster Farms, L.L.C.*, 354 So. 3d 790, 795 (La. Ct. App. 2023). To prevail, a plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and, (5) proof of actual damages. *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023).

Louisiana law does not recognize the doctrine of negligence *per se*. *Pellerin*, 354 So. 3d at 795–97. However, "statutory duties" like those set out in the ADA and LHRA can "establish the duty of care in a negligence analysis." *Lane v. Baywood Hotels, Inc.*, No. 25-cv-103, 2025 WL 1026452, at *4 (E.D. La. Apr. 7, 2025); *see Merrell v. 1st Lake Props., Inc.*, 717 F. Supp. 3d 512, 517 (E.D. La. 2024) ("The Fifth Circuit has recognized that Louisiana law may look to federal statutory and regulatory schemes in delineating the scope of a duty . . . .").

A.F. has alleged that the School Board had a duty to comply with the ADA and LHRA and failed to do so. For purposes of the instant motion, this statutory violation is sufficient to allege breach of duty under a duty/risk analysis. A.F. also alleges that this failure caused her to sustain injuries, including emotional distress and hospitalization due to severe suicidal thoughts and self-harm. Accepting these facts as true and viewing them in the light most favorable to the Plaintiff, A.F. has sufficiently alleged that the School Board violated the ADA and LHRA and thereby negligently breached its statutorily imposed duty to her.

The School Board presents alternative theories for dismissal, such as lack of proximate cause and immunity from tort liability-based claims under La. R.S. § 9:2798.1. However, the School Board has failed to adequately brief or provide support for these propositions. While we cannot say the School Board has waived these arguments completely, the Court declines to consider them in the instant motion. *See Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) ("[A] litigant can waive an argument if he fails to cite authority to support his position."); *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court.").

For these reasons, Defendant's motion to dismiss for failure to state a claim for negligence is **DENIED.**

**D. Failure to State a Claim for Intentional Infliction of Emotional Distress**

Finally, the School Board moves to dismiss A.F.'s claim of intentional infliction of emotional distress (IIED) because (1) the pleadings fail to link the conduct of the School Board to A.F.'s emotional distress; and (2) the alleged conduct does not rise to the requisite level of "extreme and outrageous."[56] But considering the Plaintiff's age and susceptibility to emotional distress, the Court is persuaded that A.F.'s allegations of repeated conduct by the School Board presents at least a plausible claim of IIED.

To state a claim for IIED under Louisiana law, a plaintiff must allege that: (1) the conduct "was extreme and outrageous"; (2) the conduct caused "severe" emotional

[56] *Id.* at 9.

distress; and (3) "the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

The Louisiana Supreme Court recognizes that "outrageous conduct is a nebulous concept, as it does not refer to any specific type of conduct." *Bustamento v. Tucker*, 607 So. 2d 532, 538, n.6 (La. 1992). As a guiding principle, extreme and outrageous conduct is that which exceeds "all possible bounds of decency" and is "regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209. Conduct can become extreme and outrageous when it amounts to a pattern of behavior or an abuse of a position of power. *Id.* at 1209–10 (citing Restatement (Second) of Torts § 46). "Even relatively 'mild' harassment may become tortious if continued over a substantial time period." *Bustamento*, 607 So. 2d at 538.

Louisiana courts also apply "the vulnerable victim factor" to the IIED analysis and consider the "defendant's knowledge that plaintiff is particularly susceptible to emotional distress." *Sullivan v. Malta Park*, 156 So. 3d 751, 759 (La. Ct. App. 2014) (quoting *White*, 585 So. 2d at 1210). Therefore, sick people, children, and pregnant women have recovered for conduct that "would not otherwise have been sufficient to constitute [IIED]." *Id.* at 760 (quoting Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and Keeton on the Law of Torts* § 12 (5th ed. 1984)).

The School Board concedes that A.F. suffered severe emotional distress but claims the amended complaint fails to link the School Board's actions to A.F.'s mental

health crisis.[57] Upon review, the amended complaint alleges several occasions where A.F. "shared she was anxious and scared to go back to school" due to the conduct of her teachers.[58] Notably, the social worker at Children's Psychiatric Hospital encouraged A.F.'s parents to remove her from school because "the staff of Pierre Part were causing A.F. to experience suicidal thoughts."[59] Accepting these facts as true and viewing them in the light most favorable to the Plaintiff, A.F. has plausibly linked her severe emotional distress to the actions of the School Board and its staff.

The School Board further asserts that, even if true, the alleged conduct does not rise to the level of "extreme and outrageous" necessary for IIED.[60] But the amended complaint presents an alleged pattern of behavior that supports a plausible finding of extreme and outrageous conduct. A.F. was admonished by authority figures at the school for "abusing [a] situation"[61] that she is embarrassed by and cannot control. One teacher docked A.F. ClassDojo points for "bad behavior" when she used the restroom.[62] Another "grabbed A.F.'s shirt by the shoulder" to prevent her from leaving the classroom.[63] The principal later threatened to suspend A.F. for getting water to take with her medication. Throughout this, school officials knew of A.F.'s susceptibility to emotional distress after placing her on a 504 Plan because she "verbaliz[ed] that she wants to kill herself."[64] Still, the alleged conduct continued.

---

[57] *Id.* at 10.
[58] ECF No. 6 ¶¶ 83, 85, 105.
[59] *Id.* ¶ 106.
[60] ECF No. 11-1 at 10.
[61] ECF No. 6 ¶ 72.
[62] *Id.* ¶ 31.
[63] *Id.* ¶ 65.
[64] *Id.* ¶ 60.

Given A.F.'s allegations of repeated behavior against a nine-year-old student with documented mental health concerns, the Court cannot say that the School Board's conduct was not extreme and outrageous as a matter of law.

For these reasons, Defendant's motion to dismiss for failure to state a claim for IIED is **DENIED.**

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's motion[65] to dismiss pursuant to Rule 12(b)(6) is **DENIED**.

New Orleans, Louisiana, this 18th day of September, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[65] ECF No. 11.